**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel on Signature Page]

*Attorneys for the Plaintiffs*
Taneesha Crooks & Anthony Brown

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TANEESHA CROOKS and ANTHONY BROWN, Individually, and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**RADY CHILDREN'S HOSPITAL – SAN DIEGO**<br>**Defendant.** | Case No: 17-CV-00246-WQH-MDD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY ENTIRE PROCEEDING, MOTION TO STRIKE CLASS ALLEGATIONS (FED. R. CIV. P. 12(f)), OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Judge:      Hon. William Q. Hayes<br>Courtroom: 14B<br>Date:      April 24, 2017 |

*Kazerouni Law Group, APC*
*Costa Mesa, California*

# TABLE OF CONTENTS

TABLE OF AUTHORTIES ...................................................................... iv

I. INTRODUCTION ................................................................... 1

II. BRIEF STATEMENT OF FACTS ............................................ 1

III. HISTORY OF THE TELEPHONE CONSUMER
PROTECTION ACT .............................................................. 2

IV. DEFENDANT'S REQUEST FOR A STAY SHOULD
BE DENIED ......................................................................... 2

   A. Legal Standard for Motion to Stay ................................... 3

   B. Hardship to Plaintiffs Warrants a
   Denial of the Stay Request ............................................... 4

      1. Plaintiffs Would be Significantly Prejudiced
      by a Delay in Conducting Discovery ........................... 5

      2. D.C. Circuit Decision in *ACA International*
      is Irrelevant to Multiple Issues Involved ................... 6

      3. The Decision in *ACA International* is Unlikely
      to Be Favorable to Defendant ..................................... 7

      4. Defendant's Argument for a Stay is
      Contradictory ............................................................. 8

   C. Defendant's Burden of Producing Discovery
   Will Remain the Same With or Without a Stay ................. 8

   D. "Orderly Course of Justice" Weighs in Favor
   of Proceeding .................................................................. 10

   E. Multiple Courts Have Denied Similar Petitions
   to Stay ............................................................................ 10

V.   **DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS ON THE PLEADINGS IS PREMATURE AND PREJUDICIAL** ....................... 11

VI.   **THE CLASS ALLEGATIONS ARE NOT SUBJECT TO RULE 12(F)** .................................................. 14

    **A. The Class Definition is Properly Pled** ..................... 14

    **B. Plaintiffs Adequately Allege the Class is Ascertainable** .................................................. 15

    **C. The Class Definition is Not an Impermissible Fail-Safe Class** .................................................. 17

    **D. Plaintiffs Need Not Demonstrate that the Requirements of Rule 23(a) and (b) are Actually Met at this Stage of the Proceedings** .......... 19

        **1.   Commonality and Predominance are Properly Pled** .................................... 19

        **2.   Typicality is Properly Pled** ..................... 19

        **3.   The Adequacy Requirement is Properly Pled** .......................................... 20

VII.   **LEGAL STANDARD ON MOTION TO DISMISS** ........................ 20

VIII.   **PLAINTIFFS ADEQUATELY PLED USE OF AN AUTOMATIC DIALYING SYSTEM** ....................... 21

    **A. Detailed Factual Allegations are Not Required and Allegations Similar to Plaintiffs' Have Been Found Sufficient to Plausibly Allege Use of an ATDS Prior to Discovery** ............................. 21

        **1.   First Approach** ........................................ 21

        **2.   Second Approach** .................................... 22

    **B. Defendant's Case Law Should Not be Followed** ........... 24

**Kazerouni Law Group, APC**
Costa Mesa, California

IX. **PLAINTIFFS ADEQUATELY PLED ARTICLE III STANDING** ...................................................................... 25

    **A. Legal Standard on Rule 12(b)(1) Motion** ......................... 25

    **B. Plaintiffs Have Adequately Alleged Article III Standing to Sue for Violation of their Substantive Rights under the TCPA** ................................. 26

        1. **The *Spokeo* Decision Does Not Support Defendant's Position** ........................................ 26

        2. ***Van Patten* is Controlling and On-Point** ........... 27

        3. **Plaintiffs Adequately Allege Concrete Injury in Fact** ............................................. 28

        4. **Plaintiffs Allege Economic Injury** ..................... 29

        5. **Plaintiffs Alleged Particularized Injuries** .......... 31

        6. ***Romero* was Incorrectly Decided and Should Not be Followed** ....................................... 31

X. **CONCLUSION** ............................................................... 33

Kazerouni Law Group, APC
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Abante Rooter & Plumbing v. Pivotal Payments, Inc.*,
No. 16-cv-05486-JCS, 2017 U.S. Dist. LEXIS 26457
(N.D. Cal. Feb. 24, 2017) ............................................... 32

*Abdeljalil v. General Electric Capital Corp.*,
No. 3:12-cv-02078-JAH-MDD (S.D. Cal.) ............................... 16

*ACA International, et al. v. F.C.C., et al.*,
No. 15-1211 ................................................. 2, 5, 6, 7, 8, 10

*ADX Comm'ns of Pensacola v. F.C.C.*,
794 F.3d 74 (D.C. Cir. Jul. 17, 2015) ............................................. 7

*Amer. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*,
743 F.2d 1519 (11th Cir. 1984) ..................................................... 4

*Aranda v. Caribbean Cruise line, Inc.*,
2016 U.S. Dist. LEXIS 111828 (N.D. Ill. Aug. 23, 2016) .......................... 29

*Artis v. Deere & Co.*,
No. C 10-5289, 2011 WL 2580621 (N.D. Cal. June 29, 2011) ................... 13

*Ass'n for Los Angeles Deputy Sheriffs v. City of Los Angeles*,
648 F.3d 986 (9th Cir. 2011) .......................................................... 25

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4937, 2011 U.S. Dist. LEXIS 57348
(N.D. Cal. May 26, 2011) ........................................................... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (S. Ct.  2007) ........................................................ 21

*Booth v. Appstack, Inc.*,
2016 U.S. Dist. LEXIS 68886 (W.D. Wash. May 25, 2016) ................ 29, 30

*Breslow v. Wells Fargo Bank, N.A.*,
755 F.3d 1265 (11th Cir. June 9, 2014) ....................................... 9

Kazerouni Law Group, APC
Costa Mesa, California

*Cabiness v. Educ. Fin. Solutions, LLC*,
    No. 16-cv-1109-JST, 2017 U.S. Dist. LEXIS 6304 (N.D. Cal. Jan. 17,
    2017) ........................................................................................ 11, 33

*Cabiness v. Educ. Fin. Solutions, LLC*,
    2016 U.S. Dist. LEXIS 142005 (N.D. Cal. Sept. 1, 2016) ................... 29, 32

*Carson Harbor Village, Ltd. v. City of Carson*,
    353 F.3d 824 (9th Cir. 2004) ................................................... 26

*Clerkin v. MyLife.com, Inc.*,
    2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ..................... 16

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ................................................ 4, 10

*Coos County v. Kempthorne*,
    531 F.3d 792 (9th Cir. 2008) ...................................................... 3

*Delino v. Platinum Cmty. Bank*,
    628 F. Supp. 2d 1226 (S.D. Cal. 2009) ........................................ 20

*Dodd-Ownes v. Kypon, Inc.*,
    2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ................................... 18

*Doe v. Chao*,
    540 U.S. 614 (2004) ........................................................... 30

*Dominguez v. Yahoo, Inc.*,
    No. 14-1751, 2015 U.S. App. LEXIS 18460 (3d Cir. Oct. 23, 2015) ........... 9

*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977) ................................................ 13

*Duguid v. Facebook, Inc.*,
    2017 U.S. Dist. LEXIS 22562 (N.D. Cal. Feb. 16, 2016) ..................... 24

*Errington v. Time Warner Cable, Inc.*,
    2016 U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016) ...................... 8

*Espinoza v. 953 Assoc., LLC*,
    280 F.R.D. 113 (S.D. N.Y. 2011) ............................................. 15

Kazerouni Law Group, APC
Costa Mesa, California

*Ewing v. SQM US, Inc.*,
  2016 U.S. Dist. LEXIS 143272 (S.D. Cal. Sept. 29, 2016)........................ 31

*FitFlop USA, LLC*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012) ...................................................... 14

*Franklin v. City of Chicago*,
  102 F.R.D. 944 (N.D. Ill. 1984) ................................................................. 19

*Genenbacher v. CenturyTel Fiber Co. II*,
  244 F.R.D. 485 (C.D. Ill. 2007)................................................................. 17

*Glick v. Performant Fin. Corp.*,
  No. 16-cv-5461-JST, 2017 WL 786293 (N.D. Cal. Feb. 27, 2017) ............. 11

*Gormley v. Nike Inc.*,
  2013 WL 322538 (N.D. Cal. Jan. 28, 2013).................................................. 17

*Gosneigh v. Nationstar Mort., LLC*,
  No. 8:16-cv-3050-T-33AEP, 2017 WL 435818
  (M.D. Fla. Feb. 1, 2017) ........................................................................... 11

*Griffith v. Consumer Portfolio Serv.*,
  838 F. Supp. 2d 723 (N.D. Ill. 2011)......................................................... 28

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ................................................................... 19

*Haw. Coal. for Health v. Hawaii*,
  365 F. App'x 874 (9th Cir. 2010)............................................................... 26

*Heffelfinger v. Elec. Data Sys. Corp.*,
  2008 WL 8128621 (C.D. Cal. Jan. 7, 2008)............................................... 18

*Henderson v. United Student Aid Funds, Inc.*,
  13-cv-1845 (S.D. Cal. 2016) ....................................................................... 4

*Hewlett v. Consol. World Travel, Inc.*,
  2016 U.S. Dist. LEXIS 112553 (E.D. Cal. Aug. 23, 2016)........................ 27

**Kazerouni Law Group, APC**
Costa Mesa, California

*Hibbs-Rines v. Seagate Techs., LLC*,
   No. C 08-0540, 2009 U.S. Dist. LEXIS 19283
   (N.D. Cal. Mar. 2, 2009)................................................................. 16

*Holmes v. Spencer*,
   685 F.3d 51 (1st Cir. 2012).............................................................. 3

*Hovila v. Tween Brands, Inc*.,
   No. c09-0491RSL, 2010 U.S. Dist. LEXIS 34861
   (W.D. Wash. Apr. 7, 2010).............................................................. 28

*I.B. v. Facebook, Inc*.,
   2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) .......................... 16

*Iniguez v. The CBE Grp*.,
   969 F. Supp. 2d 1241 (E.D. Cal. 2013) ............................................. 23

*In re Autozone, Inc., Wage and Hour Employment Practices Litig*.,
   289 F.R.D. 526 (N.D. Cal. 2012) ................................................... 17

*In re Jamster Mftg. Litig*.,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ........................................ 16

*In re Jiffy Lube Int'l, Inc*.,
   847 F. Supp. 2d 1253 (S.D. Cal. 2012) ............................................. 22

*In re Wal-Mart Stores, Inc., Wage and Hour Litig*.,
   505 F. Supp. 2d 609 (N.D. Cal. 2007)............................................... 12

*Johansen v. Vivant, Inc*.,
   2012 U.S. Dist. LEXIS 178558 (N.D. Dec. 18, 2013) ........................... 21, 23

*Johnson v. Yahoo! Inc*.,
   No. 1:14-cv-02028 (N.D. Ill.)......................................................... 33

*Juarez v. Citibank, N.A.*,
   No. 16-cv-01984-WHO, 2016 U.S. Dist. LEXIS 118483
   (N.D. Cal. Sept. 1, 2016) ............................................................ 32

*Kaminske v. JP Morgan Chase Bank*,
   cv 09-00918, 2010 U.S. Dist. LEXIS 141514
   (C.D. Cal. May 21, 2010) ............................................................ 13

**Kazerouni Law Group, APC**
Costa Mesa, California

*King v. Time Warner Cable,*
    113 F. Supp. 3d 718 (S.D. N.Y. 2015) ........................................ 30

*Kirkland-Chea v. Synchrony,*
    8:16-cv-02598-MSS-TGW (M.D. Fl. Mar. 20, 2017).............................. 11

*Knutson v. Reply!, Inc.,*
    No. cv 10-01267, 2011 U.S. Dist. LEXIS 156409
    (S.D. Cal. Apr. 13, 2011)....................................................... 24

*Kramer v. Autobytel, Inc.,*
    759 F. Supp. 2d 1165 (N.D. Cal. 2010) ........................................ 23

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ..................................................... 4, 8, 11

*Lathrop v. Uber Tech., Inc.,*
    2016 WL 97511 (N.D. Cal. Jan. 8, 2016)................................... 5, 11

*Lavigne v. First Cmty. Bancshares, Inc.,*
    2016 U.S. Dist. LEXIS 144741
    (D. N.M. Oct. 19, 2016) ................................. 29, 30, 31, 32, 33

*Lemieux v. Lender Processing Ctr.,*
    No. 16-cv-1850-BAS (DHB), 2017 U.S. Dist. LEXIS 47139
    (S.D. Cal. Mar. 24, 2017) .................................................. 24, 33

*Levya v. Certified Grocers of Cal., Ltd.,*
    595 F.2d 857 (9th Cir. 1979) .................................................... 4

*Leyse v. Bank of Am. Nat. Ass'n.,* 804 F.3d 316 (3d Cir. 2015) ................... 9

*LG Elecs., Inc. v. Eastman Kodak Co.,*
    2009 WL 1468703 (S.D. Cal. May 26, 2009) ................................... 5

*Lockyer v. Mirant Corp.,*
    398 F.3d 1098 (9th Cir. 2005) .................................................. 4

*Maier v. J.C. Penney Corp.,*
    13-cv-0163-IEG (DHB), 2013 U.S. Dist. LEXIS 84246
    (S.D. Cal. 2013).......................................................... 22, 23

**Kazerouni Law Group, APC**
Costa Mesa, California

*Manno v. Healthcare Revenue Recovery Group, LLC*,
   2012 U.S. Dist. LEXIS 132860 (S.D. Fla. Sept. 18, 2012) .................... 13, 14

*Mashiri v. Ocwen Loan Servicing, LLC*,
   2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013) ........................ 22

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985) ........................................................ 13

*Manuel v. Lucenti*,
   2004 U.S. Dist LEXIS 23102 (N.D. Ill. 2004) ............................................ 14

*Mbazomo v. ETourandtravel, Inc.*,
   No. 2:16-cv-02229-SB, 2016 U.S. Dist. LEXIS 170186
   (E.D. Cal. Dec. 8, 2016) ........................................................ 32

*McCrary v. Stifel, Nicolaus & Co., Inc.*,
   687 F.3d 1052 (8th Cir. 2012) ........................................................ 12

*Medina v. Nationstar Mortgage, LLC*,
   1:16-cv-02036-WSD (N.D. Georgia Mar. 13, 2017) ............................... 4, 7

*Mendez v. Optio Solutions, LLC*,
   No. 16-cv-01882 AJB (KSC) (S.D. Cal. Mar. 8, 2017) ......................... 7, 11

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ........................................................ 18

*Mey v. Got Warranty, Inc.*,
   No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 84972
   (N.D. W. Va. June 30, 2016) ........................................................ 27, 30

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ........................................................ 9

*Morongo Bank of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ........................................................ 35

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................ 4

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

*N.L. Indus., Inc. v. Kaplan*,
   792 F.2d 896 (9th Cir. 1986) ........................................................ 21

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ................................................ 15

*O'Hanlon v. 24 Hour Fitness USA, Inc.*,
   No. 15-cv-01821-BLF, 2016 WL 815357
   (N.D. Cal. Mar. 2, 2016) ...................................................... 9, 10

*Olney v. Job.Com, Inc.*,
   No. 1:12-cv-01724-LJO-SKO, 2013 U.S. Dist. LEXIS 141339
   (E.D. Cal. Sept. 30, 2013) .................................................. 18, 19

*Ortega Trujillo v. Conover & Co. Commc'ns*,
   221 F.3d 1262 (11th Cir. 2000) ..................................................... 4

*Osorio v. State Farm Bank, F.S.B.*,
   746 F.3d 1242 (11th Cir. 2014) ..................................................... 9

*Pacleb v. Cops Monitoring*,
   2014 U.S. Dist. LEXIS 91976 (C.D. Cal. Jul. 7, 2014) ................ 23

*Paretti v. Cavalier Label Co.*,
   702 F. Supp. 81 (S.D. N.Y. 1988) .............................................. 17

*Parks Sch. Of Bus., Inc. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995) ...................................................... 21

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) .................................................... 13

*Reichman v. Poshmark, Inc.*,
   No. 16-cv-2359-DMS, 2017 WL 436505 (S.D. Cal. Jan. 3, 2017) ............. 11

*Richardson v. Verde Energy USA, Inc.*,
   2016 U.S. Dist. LEXIS 113738 (E.D. Penn. Aug 25, 2016) ................. 6, 11

*Rogers v. Capital One Bank (USA), N.A.*,
   No. 1:15-cv-4016, 2016 U.S. Dist. LEXIS 73605
   (N.D. Ga. June 7, 2016) ............................................................ 27

*Romero v. Dep't Stores Nat'l Bank*,
  No. 15-cv-193-CAB-MDD, 2016 U.S. Dist. LEXIS 110889
  (S.D. Cal. Aug. 5, 2016) ................................................................ 31, 32, 33

*Rose v. City of Hayward*,
  126 Cal. App. 3d 926 (1981) ....................................................... 15

*Roy v. Wells Fargo, N.A.*,
  2015 U.S. Dist. LEXIS 39636 (N.D. Cal. Mar. 27, 2015) ........................ 12

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. Jan. 15, 2009) .............................. 12

*Satterfield v. Simon Schuster*,
  569 F.3d 946 (9th Cir. 2009) ....................................................... 9, 24, 25

*Shein v. Canon U.S.A., Inc.*,
  2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) ........................... 15

*Shepard v. David Evans & Assoc.*,
  694 F.3d 1045 (9th Cir. Or. 2012) .............................................. 21

*Sliwa v. Bright House Networks, LLC*,
  2016 WL 3901378 (M.D. Fla. 2016) .......................................... 8, 11

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
  2017 U.S. Dist. LEXIS 5620 (C.D. Cal. Jan. 13, 2017) ...................... 29, 31

*Soppet v. Enhanced Recovery Co., LLC*,
  679 F.3d 637 (7th Cir. 2012) ....................................................... 9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).............................................................. 26, 27, 28

*Swope v. Credit Mgmt., LP*,
  2013 WL 607830 (E.D. Mo. Feb. 19, 2013) ............................... 9

*Tasion Communs., Inc. v. Ubiquiti Networks*,
  2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) .............. 12

*Vaccaro v. CVS Pharmacy, Inc.*,
  2013 U.S. Dist. LEXIS 99991 (S.D. Cal. Jul. 16, 2013) ................ 6, 21

*Ung v. Universal Acceptance Corp.*,
   2016 WL 4132244 (D. Minn. Aug. 3, 2016) ......................................... 25, 27

*United States v. Funds*,
   719 F.3d 648 (7th Cir. 2013) ........................................................................ 25

*United States v. Students Challenging Regulatory Agency Procedures*,
   412 U.S. 669 (1973) ...................................................................................... 33

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) .......................................................... 17, 27, 28

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ........................................................................ 13

*Walker v. World Tire Corp., Inc.*,
   563 F.2d 918 (8th Cir. 1977) ........................................................................ 12

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...................................................................................... 26

*Weber v. Dep't of Veterans Affairs*,
   521 F.3d 1061 (9th Cir. 2008) ...................................................................... 21

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ................................................................ 12, 14

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................... 7

15 U.S.C. § 1681e(b) ......................................................................................... 26

47 U.S.C. § 227 ............................................................................................ 1, 10

47 U.S.C. § 227(a)(1) .................................................................................... 1, 24

47 U.S.C. § 227(b)(1)(A) .................................................................................. 17

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................. 2

47 U.S.C. § 227(b)(3) .......................................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kazerouni Law Group, APC**
Costa Mesa, California

## Rules

Fed. R. Civ. P. 1 ........................................................................................ 10

Fed. R. Civ. P. 8 ........................................................................................ 21

Fed. R. Civ. P. 12(f) ................................................................. 1, 12, 14, 20

Fed. R. Civ. P. 23 ........................................................... 12, 14, 20, 34

Fed. R. Civ. P. 23(a) .................................................................... 11, 19, 34

Fed. R. Civ. P. 23(a)(2) ............................................................................ 19

Fed. R. Civ. P. 23(b) .......................................................................... 11, 19

Fed. R. Civ. P. 23(b)(1) ............................................................................ 25

Fed. R. Civ. P. 23(b)(3) ............................................................................ 34

Fed. R. Civ. P. 23(b)(6) ...................................................................... 1, 20

## Other

H. Newberg, *Newberg on Class Actions*, § 1115(b) (1st Ed. 1977) ....................... 20

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*,
FCC 03-153, 2003 FCC LEXIS 3673 (FCC Jul. 3, 2003) .................................. 8, 9

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*,
FCC 07-232, 2008 FCC LEXIS 56 (FCC Dec. 28, 2007) ................................... 8, 9

*In the Matter of Rules and Regulations Implementing the Telephone*
*Consumer Protection Act of 1991*, Declaratory Ruling and Order,
FCC 15-72, 2015 FCC LEXIS 1586 (FCC Jul. 10, 2015) ................................... 7

*Retention Periods of Major Cellular Service Providers*,
U.S. Dep't of Justice (Mar. 2011), *available at* https://cryptome.org/isp-
spy/cellular-spy3.pdf (last accessed on Apr. 7, 2017) ................................... 6

**Kazerouni Law Group, APC**
Costa Mesa, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kazerouni Law Group, APC**
Costa Mesa, California

## I.     INTRODUCTION

Defendant RADY CHILDREN'S HOSPITAL – SAN DIEGO ("RCHSD" or "Defendant") is alleged to have negligently and/or intentionally contacted Plaintiffs, TANEESHA CROOKS and ANTHONY BROWN ("Plaintiffs"), on their cellular telephones without express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA"), thereby invading their privacy protected by the TCPA.  Plaintiff seek to represent themselves and others similarly harm by Defendant's conduct.

Defendant moves to stay the entire proceeding, strike class allegations under Fed. R. Civ. P. 12(f), or alternatively to dismiss the action under Fed. R. Civ. P. 12(b)(6). A stay of this proceeding would unnecessarily prolong litigation and prejudice Plaintiffs and the putative class. Further, it is clear that Plaintiffs have met or exceeded the necessary federal pleading requirements to sue RCHSD for violations of their substantive rights under the TCPA. Defendant's alternative motion to strike adequately pled class allegations is prejudicial and premature, and seeks to deprive Plaintiffs of the benefit of class discovery prior to discovery.

Therefore, Plaintiffs respectfully request that the Court deny RCHSD's motions in their entirety.

## II.     BRIEF STATEMENT OF FACTS

Plaintiffs allegedly incurred a debt allegedly owed to Defendant. Comp. ¶¶ 10, 20. Defendant subsequently placed calls to Plaintiffs using a pre-recorded voice via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1). *Id.* at ¶¶ 11, 21. At no time did Plaintiffs provide Defendant with "prior express consent" to receive pre-recorded or autodialed calls to their cellular telephones. *Id.* at ¶ 18.  Further, by and through counsel at Law Office of Daniel G. Shay, Plaintiffs expressly revoked any consent to receive calls on their cellular telephones.  *Id.* at ¶¶ 12, 23. Despite Plaintiffs' respective requests for Defendant to cease calls, Defendant continued to call Plaintiffs using an artificial or

prerecorded voice, with no live human on the line.  *Id.* at ¶¶ 16-17, 22.

## III.   HISTORY OF THE TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America. Congress intended to combat the threat to privacy caused by automated telemarketing practices by making it unlawful to: (A) make any call (other than a call made for emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Specifically, use of an ATDS, and/or artificial or prerecorded voice is prohibited. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA sets statutory damages in the amount of $500 per violation and provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A-B).

## IV.   DEFENDANT'S REQUEST FOR A STAY SHOULD BE DENIED

Defendant argues that a stay is "necessary" pending the D.C. Circuit's decision in *ACA International* because: (a) the instant lawsuit cannot proceed without the FCC's definition of an ATDS; (b) the relevant factors weigh in favor of Defendant; and (c) it will be beneficial to the Court if the proceeding is stayed.

In *ACA International*, the D.C. Circuit will consider four (4) questions: (a) whether capacity and predictive dialers within the definition of an ATDS are overly broad, (b) whether the treatment of "prior express consent" should provide a safe harbor with respect to reassigned numbers; and (c) whether called parties should be confined to "intended recipients." *See* Def.'s Exh. 1, p. 6. In analyzing the factors warranting a stay, Defendant completely disregards the prejudice to Plaintiffs, fails to establish genuine hardship to Defendant if the stay is denied, and merely seeks to unnecessarily delay inevitable discovery based on speculation as to what may happen in *ACA International.* Regardless of the outcome of the appeal in the D.C. Circuit, Plaintiffs will need discovery as to the telephone systems/equipment used by Defendant during the relevant period.

Kazerouni Law Group, APC
Costa Mesa, California

In Defendant's 2.5-page discussion regarding the arguments raised in *ACA International*, Defendant fails to specify why the outcome is relevant, here. In fact, Defendant ignores the fact that Plaintiffs alleged that neither of them provided Defendant with prior express consent to be called, and that Plaintiffs were "intended" recipients of calls. Compl. ¶¶ 17, 18, 30. Further, Defendant fails to develop any arguments for a stay on the basis of "prior express consent" or the definition of a "called party," and spends the majority of its motion discussing the capacity issues only. Thus, Defendant's undeveloped arguments are waived. *See Holmes v. Spencer,* 685 F.3d 51, 66 (1st Cir. 2012) (holding that arguments are waived if they are "adverted to in a perfunctory manner [or] unaccompanied by some effort at developed argumentation"). Defendant may not unfairly prejudice Plaintiffs by later developing its arguments for the first time in a reply brief. *See Coos County v. Kempthorne*, 531 F.3d 792, 812 n. 16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

In any event, as it concerns the reassigned number issue on appeal, the Plaintiffs did not allege that Defendant placed calls to reassigned phone numbers; and Defendant offers no evidence in its motion that the telephone numbers for Plaintiffs were originally assigned to individuals other than Plaintiffs from whom Defendant received prior express consent.

Lastly, with regard to the revocation of consent issue on appeal, a stay is not warranted because: (a) Plaintiff Brown never gave consent to Defendant to be contacted, and (b) both Plaintiffs, here, allege they revoked their consent in writing through letters from their attorney (Compl., ¶¶ 12 and 23). Thus, the issues concerning methods of revocations on appeal in *ACA International* are irrelevant.

### A.   Legal Standard for Motion to Stay

The inherent power of district courts to grant stays calls "for exercise of sound discretion," where the court *must* properly limit the scope of the stay. *Leyva v. Certified Grocers of Cal., Ltd,* 595 F.2d 857, 863 (9th Cir. 1979); *Medina v.*

**Kazerouni Law Group, APC**
Costa Mesa, California

*Nationstar Mortgage, LLC,* 1:16-cv-02036-WSD, dkt. 25, *3 (N.D. Georgia Mar. 13, 2017); *Ortega Trujillo v. Conover & Co. Commc'ns,* 221 F.3d 1262, 1264 (11th Cir. 2000) (same). "A stay must not be 'immoderate.'" *Id.* "Stays should not merely postpone the district court's inevitable consideration of the claim, they should conserve judicial resources or aid in comprehensive disposition of the litigation." *Medina,* 1:16-cv-02036-WSD, *4 (internal quotation omitted)(citing *Amer. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1525 (11th Cir. 1984).

When deciding whether to grant a stay, courts within the Ninth Circuit generally consider the following factors: (a) the hardship or inequity upon the non-moving party that would result from the stay; (b) the hardship or inequity upon the moving party in being required to go forward after denial of the stay; and (c) the orderly course of justice measured in items of the simplifying or complicating of issues, proof, and questions of law that would be expected to result from a stay. *Henderson v. United Student Aid Funds, Inc.,* 13-cv-1845, Dkt. 139 (S.D. Cal. 2016); *see also Lockyer v Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005). "The proponent of a stay bears the burden of establishing its need." *Nken v. Holder,* 556 U.S. 418, 433-34 (2009).

**B.        Hardship to Plaintiffs Warrants a Denial of the Stay Request**

In determining whether to stay the action, the Court must balance the "possible damage [to Plaintiffs] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then Defendant must show a "clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936).

Here, Defendant incorrectly argues that Plaintiffs will not be prejudiced by a stay of the action. Def.'s Motion, p. 7.  Defendant's argument is flawed for many

Kazerouni Law Group, APC
Costa Mesa, California

reasons: (1) Plaintiffs are significantly prejudiced by <u>any</u> delay; (2) the D.C. Circuit decision in *ACA International* is not dispositive because this case involves pre-recorded calls; (3) the D.C. Circuit decision is unlikely to favor Defendant; and (4) Defendant's argument for a stay based on the meaning of an ATDS is contradictory to its motion to dismiss.

### 1.   <u>Plaintiffs Would be Significantly Prejudiced by a Delay in Conducting Discovery</u>

Defendant ignores the fact that Plaintiffs and Plaintiffs' putative class would be unfairly disadvantaged by an unknown and indefinite delay in conducting discovery. Many documents and evidence including call logs and dialer information are likely under the control of third parties, such as calling vendors that may have been used by Defendant to place the calls at issue. *See LG Elecs., Inc. v. Eastman Kodak Co.,* 09-cv-344, 2009 WL 1468703, at *3 (S.D. Cal. May 26, 2009). It is currently unknown, without discovery, whether Defendant placed the calls in-house and what its data retention policy is (prior to discovery of initial disclosures). If Defendant has not maintained sufficient records of the calls that it placed to Plaintiffs and the putative class members within the last four (4) years, then a prompt subpoena to Defendant's landline carrier for Defendant's outgoing call records is absolutely necessary to preserve that important and relevant data.

Although Defendant correctly notes that oral arguments and briefing in the appeal in *ACA International* are now complete, it is far from guaranteed that a final result in *ACA International* is imminently forthcoming. *See Lathrop v. Uber Tech., Inc.*, 2016 WL 97511 at *4 (N.D. Cal. Jan. 8, 2016) ("[T]he D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff.").

Kazerouni Law Group, APC
Costa Mesa, California

While the statute of limitations in TCPA actions is four years, Plaintiffs will struggle in obtaining call logs from third party carriers with short-term retention periods lasting as short as 6 months. Therefore, obtaining such logs is already burdensome to Plaintiffs and the putative Class members. Cellular telephone carriers do not maintain call records indefinitely. S*ee Retention Periods of Major Cellular Service Providers,* U.S. Dep't of Justice (Mar. 2011), *available at* https://cryptome.org/isp-spy/cellular-spy3.pdf (last accessed on Apr. 7, 2017) (showing that call records are retained for six months by Cricket and Metro PCS, one year by Verizon, five years for T-Mobile (two years for pre-paid), five to seven years for AT&T, and 18 to 24 months by Sprint.").

Also, memories of witnesses may fade and documents will inevitably become misplaced if the stay is granted. *Richardson v. Verde Energy USA, Inc.,* 2016 U.S. Dist. LEXIS 113738, at *5 (E.D. Penn. Aug. 25, 2016). Employees of Defendant may be fired, transferred, or quit; meanwhile, there is no articulable prejudice to Defendant, which has an obligation to maintain records demonstrating consent. On the other hand, Plaintiffs and the putative Class members face the risk of losing access to pertinent records and other related evidence.

Therefore, this Court should deny Defendant's Motion to Stay.

## 2.   D.C. Circuit Decision in *ACA International is Irrelevant to Multiple Issues Involved*

Although Defendant argues that the decision in *ACA International* would be helpful to this Court, Defendant ignores the fact that this case involves pre-recorded calls, which are not subject to review on appeal in the D.C. Circuit.  The distinction here is crucial because regardless of the decision in *ACA International* regarding the definition of ATDS, Defendant is still subject to liability for placing pre-recorded calls to individuals. *See Vaccaro v. CVS Pharmacy, Inc.,* 2013 U.S. Dist. LEXIS 99991, at *1 (S.D. Cal. Jul. 16, 2013) ("Because the provision is written in the disjunctive, the plaintiffs can state a claim under the TCPA alleging

Kazerouni Law Group, APC
Costa Mesa, California

the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS."). "Even if the outcome was relevant to these proceedings and favorable to the Defendant, other issues would remain ripe for consideration, discovery, and resolution." *Mendez     v. Optio Solutions, LLC,* No. 16-cv-01882 AJB (KSC), at *6 (S.D. Cal. Mar. 8, 2017).

Defendant's motion to stay the entire proceeding, here, is inappropriate because Defendant will be subject to liability regardless of the D.C. Circuit's decision as to whether the FCC's definition of "capacity" is too broad. On this basis alone, Defendant's motion to stay should be denied. *See e.g. Medina,* 1:16-cv-02036-WSD, *4 (internal quotation omitted) ("Stays should not merely postpone the district court's inevitable consideration of the claim, they should conserve judicial resources or aid in comprehensive disposition of the litigation."

### 3.    The Decision in *ACA International* is Unlikely to Be Favorable to Defendant

The only aspect of the decision in *ACA International* that *could* (albeit highly unlikely) have some effect on Defendant's claims is the definition of an "ATDS."  In *ACA International,* the D.C. Circuit will address, among other things, the term "capacity" in defining ATDS.  Specifically, the D.C. Circuit Court will address whether the FCC's current definition of the term "capacity" is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or whether the FCC "articulated 'a rational connection between the facts found and the choice made.'" *See* 5 U.S.C. § 706(2)(A); *see also ADX Comm'ns of Pensacola v. F.C.C.,* 794 F.3d 74, 79 (D.C. Cir. Jul. 17, 2015). Therefore, the D.C. Circuit will be "highly deferential" to the 2015 FCC Order, and the 2015 Order will be presumed valid.  The FCC recently explained that Congress intended a broad definition of autodialer, and that the Commission has already <u>twice</u> addressed the ATDS issue in 2003 and 2008. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling

**Kazerouni Law Group, APC**
Costa Mesa, California

and Order, FCC 15-72, 2015 FCC LEXIS 1586, *28 (FCC Jul. 10, 2015).   Thus, "it is more likely than not that the D.C. Circuit will uphold the Final Order." *Sliwa v. Bright House Networks, LLC,* 2016 WL 3901378, at *3 (M.D. Fla. 2016) (citations and quotations omitted).

Consequently, the ATDS issue will likely be decided favorably to Plaintiffs', which further warrants a denial of Defendant's Motion to Stay.

### 4.    Defendant's Argument for a Stay is Contradictory

On the one hand, Defendant contends that the meaning of an ATDS is unclear in light of the appeal in the D.C. Circuit; yet on the other hand, Defendant seems to argue that the complaint should be dismissed because Plaintiffs have not adequately alleged the use of an ATDS. Defendant contradicts itself in that it finds the meaning of an ATDS clear enough to determine whether Plaintiffs have adequately alleged the use of such equipment. Such contradiction also serves to distinguish this case from *Errington v. Time Warner Cable, Inc.,* 2016 U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016), cited by Defendant. Def.'s Memo., 10:8-13.

### C.    Defendant's Burden of Producing Discovery Will Remain the Same With or Without a Stay

Defendant's "burden" of producing discovery, without more, does not constitute a clear case of hardship or inequity that would justify a stay because such production is necessary and unavoidable regardless of the outcome in *ACA International* (*Landis*, 299 U.S. at 255) for the following reasons: (1) this Court is bound by Ninth Circuit precedent and its explanation of "capacity"; (2) the Court is further bound by the FCC's already established definition of an ATDS under the 2003 and 2008 declaratory rulings,[1] which are not the subject of the appeal in the

---

[1] *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991* ("2003 FCC Ruling")*,* FCC 03-153, 2003 FCC LEXIS 3673, at *206 (FCC Jul. 3, 2003) ("The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention."); *In re Rules Implementing the Tel.*

Kazerouni Law Group, APC
Costa Mesa, California

D.C. Circuit, and may no longer be challenged under the Hobbs Act (*see* 28 U.S.C. § 2343); and (3) discovery of Defendant's telephone dialer or dialing equipment will tremendously assist the parties in litigating the action and reaching any potential settlement even if the definition of an ATDS is modified in the future.

Regardless of the D.C. Circuit decision, this Court is bound to uphold the FCC's prior regulatory determination and abide by prior established precedent set within the Ninth Circuit and courts across the country. *See Satterfield   v.   Simon Schuster,* 569 F.3d 946, 951 (9th Cir. 2009) (defining an ATDS as having capacity to   "store, produce, or call randomly or sequentially generated telephone numbers."); 2003 FCC Ruling, at *206; 2008 FCC Ruling, at 566); *Swope   v.   Credit Mgmt., LP*, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013).   Thus, "[e]ven assuming that the decision from the D.C. Circuit will be favorable to Defendants, it is, of course not binding on this Court." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at *8 (N.D. Cal. Mar. 2, 2016).[2] Specifically, if the D.C. Circuit requires the FCC to reconsider the capacity issue, that decision will not be dispositive, here.

Defendant fails to demonstrate "hardship or inequity" (*see Landis*, 398 F.3d

---

*Consumer Prot. Act of 1991* ("2008 FCC Ruling"), FCC 07-232, 2008 FCC LEXIS 56, at *20, (FCC Dec. 28, 2007).

[2] In addition, this is not the first instance in which a federal appellate court occasioned to interpret the terms, "called party" and "ATDS," as understood in the TCPA.  *See Leyse v. Bank of Am. Nat. Ass'n.*, 804 F.3d 316, 325 n.13 (3d Cir. 2015) (defining a "called party"); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640-41 (7th Cir. 2012) (same); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014) (same); *see also Dominguez v. Yahoo, Inc.*, No. 14-1751, 2015 U.S. App. LEXIS 18460, at *2 (3d Cir. Oct. 23, 2015) (defining an ATDS); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (same). Similarly, multiple courts across the country provided guidance as to the definition of a "called party." *E.g., Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637 (7th Cir. 2012); *Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. June 9, 2014).

Kazerouni Law Group, APC
Costa Mesa, California

at 255) to justify a stay by erroneously arguing that it will be burdened with unnecessary discovery regarding its dialers, because such discovery is necessary and unavoidable regardless of the outcome in *ACA International*. Even assuming the D.C. Circuit's decision somehow favors the Defendant, the discovery of Defendant's dialers, model, capacity, telephone logs, consent, revocation of consent, and called individuals will be relevant and <u>necessary</u> to apply any newly defined standard that may or may not arise. *See O'Hanlon,* 15-cv-01821-BLF, *8, ("[M]oving forward with this case in spite of the FCC appeals would pose little prejudice to Defendants."). Importantly, the D.C. Circuit court cannot re-write the law and alleviate Defendant from liability under 47 U.S.C. § 227 for placing autodialed calls.

Given the Court's mandate "to secure the just, speedy, and inexpensive determination of every action," this case should proceed notwithstanding the *ACA International* appeal. Fed. R. Civ. P. 1. *See also O'Hanlon,* 15-cv-01821-BLF, *9. Thus, this Court should deny Defendant's Motion to Stay because a stay will only delay, and not prevent, inevitable discovery.

### D.   "Orderly Course of Justice" Weighs in Favor of Proceeding

The Court must consider "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law, which could be expected to result from a stay." *CMAX,* 300 F.2d at 268. Regardless of whether the four questions raised within *ACA International* will be answered, the D.C. Circuit decision will not be dispositive of Plaintiff's case because the court cannot change the federal TCPA law regarding Defendant's liability even if any of the definitions are narrowed, and discovery of facts for all of those issues is necessary.

Defendant's motion, therefore, needlessly seeks to prejudice Plaintiffs with the unnecessary delay during which Plaintiffs' <u>entire</u> proceeding will be stayed, not just discovery on certain limited issues such as use of an ATDS.

Therefore, the overall balance greatly favors denial of the stay.

### E.   Multiple Courts Have Denied Similar Petitions To Stay

Even though some courts have granted a similar motion to stay, this case does not present the "rare circumstances" in which a stay is appropriate. *Landis,* 299 U.S. at 255. In fact, multiple courts have denied motions to stay in TCPA proceedings. *See Kirkland-Chea v. Synchrony,* No. 8:16-cv-02598-MSS-TGW (M.D. Fl. Mar. 20, 2017); *Medina,* 1:16-cv-02036-WSD, *4; *Mendez,* No. 16-cv-01882–AJB-KSC, *5 (S.D. Cal. Mar. 8, 2017); *Glick v. Performant Fin. Corp.*, No. 16-cv-5461-JST, 2017 WL 786293 at *22 (N.D. Cal. Feb. 27, 2017); *Gosneigh v. Nationstar Mort., LLC,* No. 8:16-CV-3050-T-33AEP, 2017 WL 435818, at *2, (M.D. Fla. Feb. 1, 2017) (declining to stay TCPA case because *ACA International* will not be dispositive where the defendant made calls both while using an ATDS and a prerecorded voice); *Cabiness v. Educ. Fin. Solutions, LLC,* No. 16-CV-1109-JST, 2017 U.S. Dist. LEXIS 6304, at *3 (N.D. Cal. Jan. 17, 2017); *Reichman v. Poshmark, Inc.*, No. 16-CV-2359-DMS, 2017 WL 436505, at *5 (S.D. Cal. Jan. 3, 2017); *Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 4478839, at *3 (E.D. Pa. Aug. 25, 2016); *Sliwa v. Bright House Networks, LLC,* No. 16-CV-235-FTM-29 MRM, 2016 WL 3901378, at *4-5 (M.D. Fla. July 19, 2016)*; Lathrop*, 2016 WL 97511, at *4.

Likewise, this Court should deny Defendant's motion to stay. Should the Court be inclined to grant a stay, a stay should only be granted until the D.C. Circuit rules on the pending appeal and not until any potential appeal of that ruling is resolved; and in all fairness and avoiding prejudice to Plaintiffs, any stay should be limited to discovery on the ATDS issue, with the parties being permitted to conduct discovery on all other discovery issues.

## V.   DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS ON THE PLEADINGS IS PREMATURE AND PREJUDICIAL

Defendant argues that Plaintiffs' class allegations should be stricken and thus class certification should be denied because: (1) the issue of consent makes

Kazerouni Law Group, APC
Costa Mesa, California

the case unsuitable for class treatment; (2) the Fed. R. Civ. P. 23(a) and (b)(3) requirements are lacking; and (3) the Complaint alleges a fail-safe class. *See* Def. Memo. p. 10–19.

The motion is premature and prejudicial to Plaintiffs because Defendant seeks to bring a disguised motion to preemptively deny class certification[3] without affording Plaintiffs the benefit of any discovery. While "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a [motion to strike or dismiss]" (*McCrary v. Stifel, Nicolaus & Co., Inc.,* 687 F.3d 1052, 1059 (8th Cir. 2012)), "the propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp., Inc.,* 563 F.2d 918, 921 (8th Cir. 1977).

Notably, Defendant relies primarily on cases where *motions for class certification* were denied, which demonstrates the rarity in which class allegations are stricken outside of that context. *See* Def. Memo., 10–14. Perhaps the only case that Defendant cited to supports its position is *Sanders v. Apple, Inc.* ("*Sanders*"), 672 F. Supp. 2d 978 (N.D. Cal. Jan. 15, 2009), which has been distinguished by many courts as an outlier. *See Roy v. Wells Fargo, N.A.*, 2015 U.S. Dist. LEXIS 39636, at *4–5 (N.D. Cal. Mar. 27, 2015) (citing *Sanders* and stating that "[o]ther judges have held that a motion to strike class action allegations may be brought (but granted only rarely) at the motion to dismiss stage"); *Tasion Communs., Inc. v. Ubiquiti Networks*, 2014 U.S. Dist. LEXIS 35455, at *8–10 (N.D. Cal. Mar. 14, 2014) (questioning the viability of *Sanders* in light of Ninth Circuit's decision to reverse district court's grant of motion to strike in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)). In reality, "the granting of motions to dismiss class allegations before discovery has commenced is rare." *In re Wal-Mart Stores, Inc., Wage and Hour Litig.,* 505 F. Supp. 2d 609, 614-15 (N.D. Cal.

---

[3] A motion for class certification is governed by Fed. R. Civ. P. 23, and not Fed. R. Civ. P. 12(f).

Kazerouni Law Group, APC
Costa Mesa, California

2007). This is not such a rare case where striking the properly pled class allegations is appropriate.

Further, in considering a challenge to class certification at the pleading stage, the motion must be denied if plaintiffs make either a "prima facie showing that the class action requirements of [Rule] 23 are satisfied," *or* show that "discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). For a prima facie showing, plaintiffs are only required to show that they have pled claims that *may* later be certified after discovery, not that certification will *likely* be granted. *See, e.g.*, *Artis v. Deere & Co.*, No. C 10-5289, 2011 WL 2580621, at *2-4 (N.D. Cal. June 29, 2011) (prima facie showing does "not concern" "whether Plaintiff will ultimately satisfy her burden of establishing that a class action is proper"), *aff'd* 276 F.R.D. 348 (N.D. Cal. 2011); *Kaminske v. JP Morgan Chase Bank*, CV 09-00918, 2010 U.S. Dist. LEXIS 141514, at *8-9 (C.D. Cal. May 21, 2010).

Here, as in most class actions, "the pleadings alone will not resolve the question of class certification," and therefore "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 FN 5 (9th Cir. 2011) (it is an abuse of discretion to dismiss class action if "propriety of a class action cannot be determined . . . without discovery") (citations omitted). "The court should defer a decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues." *Vinole*, 571 F.3d at 942 (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 & n.14 (11th Cir. 2008)).  That is the case here.

Simply put, Defendant improperly seeks to avoid a class action without permitting limited class discovery necessary to support a class certification

motion.  As aptly explained by the court in *Manno*:

> While Defendant would essentially have the Court decide that Plaintiff's class action cannot succeed, such a decision would be premature. <u>Indeed, it strikes this Court as untenable to rule at this stage that Plaintiff's class certification motion fails and, at the same time, Plaintiff is not entitled to the very discovery that may establish an essential element of the class.</u>

*Manno v. Healthcare Revenue Recovery Group, LLC,* 2012 U.S. Dist. LEXIS 132860, *9-10 (S.D. Fla. Sept. 18, 2012) (emphasis added).

As such, Defendant's Motion should be denied as premature and prejudicial to Plaintiffs.  If Defendant truly wants to bring a preemptive motion to deny class certification under Rule 23, it should do so and Plaintiffs should be permitted adequate discovery to respond to such motion.

## VI.    THE CLASS ALLEGATIONS ARE NOT SUBJECT TO RULE 12(F)

Under the motion to strike standard provided by Fed. R. Civ. P. 12(f), the Plaintiffs' class allegations are not "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating *spurious issues* by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 2010 WL 3222417, at *3 (9th Cir. 2010) (quotation omitted, emphasis).  The class allegations are not spurious issues and the Fed. R. Civ. P. 23 requirements were properly pled. *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (finding improper "such a motion [under Rule 12(f)] appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification").

Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint. Defendant is also not permitted to

Kazerouni Law Group, APC
Costa Mesa, California

challenge the truthfulness of the class allegations on said motion, yet that is exactly what Defendant attempts to do here. *See Manuel v. Lucenti*, 2004 U.S. Dist. LEXIS 23102, 2004 WL 2608355, *3 (N.D. Ill. 2004) (stating that "Defendants therefore are moving to strike the disputed paragraphs from plaintiffs' complaint on the basis that it is highly improbable that the allegations are true, but Rule 12(f) is not the appropriate mechanism to request such relief").

### A.   The Class Definition is Properly Pled

The definition proposed in the Complaint, which was formed prior to the benefit of discovery, is based on objective criteria and is clearly defined.  Compl., ¶ 36.  Defendant has not and cannot identify any aspect of the proposed class definition that is based on subjective criteria.  This is fatal to Defendant's position.

Defendant asserts that "the proposed class is not precisely and adequately defined" (Def. Memo.,16:18); however, a class definition "need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998). Furthermore, Plaintiffs emphasize that the question of ascertainability is a matter to be determined in a motion for class certification, not a motion to strike.

Defendant also argues that Plaintiffs' class definition requires an individualized fact finding analysis, and is therefore, inadequate.  Def. Memo., 14:15–17, 15:20–21, 17:1–3, 19:4–5. Such argument, however, is premature and improperly challenges allegations of common issues of fact and law. *See* Compl. ¶¶ 38-41.

Thus, the class definition is properly alleged and should not be stricken.

### B.   Plaintiffs Adequately Allege the Class is Ascertainable

Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records. *Rose v. City of Hayward,* 126 Cal. App. 3d 926, 932 (1981). Importantly, "class members need not be ascertained prior to certification, but must be ascertainable at some

<div style="margin-left:auto; writing-mode:vertical">

**Kazerouni Law Group, APC**
Costa Mesa, California

</div>

Kazerouni Law Group, APC
Costa Mesa, California

point in the case." *Espinoza v. 953 Assoc. LLC,* 280 F.R.D. 113, 125 (S.D. N.Y. 2011).[4]  Plaintiffs allege that "[t]he Class can be identified through Defendant's records or Defendant's agents' records" (Compl., ¶ 40[5]), and Defendant may not challenge the correctness of these allegations on a Rule 12(f) motion to strike.

In rejecting similarly premature efforts to strike class allegations, courts have recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record. *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4937, 2011 U.S. Dist. LEXIS 57348, at *37–39 (N.D. Cal. May 26, 2011) (declining to dismiss or strike class claims, "whether the class is ascertainable and whether a class action is superior should be resolved in connection with a class certification motion."); *I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) (denying as premature a motion to strike class allegations based on argument that allegations presented highly individualized facts); *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal. 2011) (rejecting motion to dismiss class allegations in advance of a motion for class certification as class allegations are disputed and require ample discovery); *Hibbs-Rines v. Seagate Techs., LLC*, No. C08-0540, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to developing the shape and form of a class action and

---

[4] *See Shein v. Canon U.S.A., Inc.,* 2009 WL 3109721, *10 (C.D. Cal. Sept. 22, 2009) ("The Court finds that these matters are more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record"); *In re Jamster Mftg. Litig.,* 2009 WL 1456632, *7 (S.D. Cal. May 22, 2009) ("the court declines to address issues of class certification at the present time . . . piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interest of the court or parties").

[5] The Complaint also alleges sufficient facts to show numerosity is satisfied. *See* Compl., ¶ 37 (in the thousands).

1   granting of motions to dismiss class allegations before discovery has commenced

2   is rare'") (internal quotations and citations omitted); *Abdeljalil v. General Electric*

3   *Capital Corp.*, No. 3:12-cv-02078-JAH-MDD. Dkt. No. 29 (S.D.Cal.) (finding

4   motion to dismiss class allegations premature) [Exhibit 1 to RJN].

5       Defendant also presented many red herrings perhaps in an attempt to

6   confuse the issues. For example, Defendant repeatedly complained that Plaintiffs

7   did not identify the subject matter of the calls at issue (Def. Memo., 14:10–13,

8   16:20–21); however, the subject matter is irrelevant because the TCPA was

9   written as a content neutral provision. *See* 47 U.S.C. § 227(b)(1)(A).

10  Furthermore, Defendant attempted to introduce outside facts, which is improper in

11  a Rule 12(f) motion. *See generally,* Def. Memo. 14–15. Such outside facts should

12  be disregarded as extrinsic evidence that cannot be considered in a motion to

13  strike. *See Paretti v. Cavalier Label Co.*, 702 F. Supp. 81, 85 (S.D. N.Y. 1988).

14       **C.    The Class Definition is Not an Impermissible Fail-Safe Class**

15       A fail-safe class is when the class definition precludes the possibility of an

16  adverse judgment against class members, such that the class members either win

17  or are not in the class. *See Gormley v. Nike Inc.,* 2013 WL 322538, *8, fn. 5

18  (N.D. Cal. Jan. 28, 2013) (citing *Genenbacher v. CenturyTel Fiber Co. II,* 244

19  F.R.D. 485, 488 (C.D. Ill. 2007)). Here, even if someone qualifies as a class

20  member, Defendant can easily still procure an adverse judgment by simply

21  proving non-use of an ATDS, or that a prerecorded or artificial voice was not

22  used. Alternatively, Defendant may attempt to prove asserted defenses such as

23  prior express consent.[6]

24       Nonetheless, it is not clear that the Ninth Circuit even forbids fail-safe

25  classes. "Recently, the Central District of California noted, the Ninth Circuit does

26  ─────────────

27  [6] "We think it plain from the statutory language that prior express consent is an affirmative defense, not an element of a TCPA claim." *Van Patten v. Vertical*

28  *Fitness Grp., LLC*, 847 F.3d 1037, FN 3 (9th Cir. 2017).

Kazerouni Law Group, APC
Costa Mesa, California

not seem to have 'explicitly held that fail-safe classes are precluded.'" *In re Autozone, Inc., Wage and Hour Employment Practices Litig.,* 289 F.R.D. 526, 546 (N.D. Cal. 2012) (citing *Heffelfinger v. Elec. Data Sys. Corp.,* 2008 WL 8128621, *10 n. 57 (C.D. Cal. Jan. 7, 2008)).

Furthermore, in a proper motion for class certification, the Court would have discretion to redefine the class definition if needed to avoid ascertainability problems. *See e.g., Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science.  Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."); *Dodd-Ownes v. Kypon, Inc.,* 2007 WL 420191, *3 (N.D. Cal. Feb. 5, 2007).

Either way, the class definition need not be redefined because it does not expressly exclude individuals who may have consented to be called by Defendant, and thus it does not preclude the possibility of an adverse judgment against class members.  Defendant concedes "the phrase 'express consent' is not explicitly stated in the paragraph describing the purported class members."  Def. Memo., 18:27–28. Defendant twisted the class definition to include only members who did not receive prior express consent, and then attacked this hypothetical class by asserting that judgment on liability is necessary to determine class membership because the definition is incapable of including members who consented.  *See* Def. Memo., 18:27–28, 19:1–7. Defendant cannot have it both ways.  *See Olney v. Job.Com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 U.S. Dist. LEXIS 141339, at *34-35 (E.D. Cal. Sep. 30, 2013), stating:

> Although Third Party Defendants are correct that prior consent means there is no violation of the TCPA, Third Party Defendants cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons whose rights have been violated

Kazerouni Law Group, APC
Costa Mesa, California

> because they did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law.

*Id.* Defendant must look to the actual class definition and may not rewrite the Complaint to formulate an avenue for attack.

Plaintiffs may ultimately be correct in alleging that Defendant did not obtain prior express consent to place any of the alleged automated calls at issue (*see* Compl., ¶¶ 30, 41(a) and 42), in which case it would make sense not to include language of lack of consent in the proposed class definition. If, after discovery, Plaintiffs learn that Defendant has evidence of prior express consent to call some of the putative class members, then the class definition can be redefined or narrowed in a motion for class certification. However, it is improper and premature to speculate as to what evidence Defendant might produce during discovery.

### D. Plaintiffs Need Not Demonstrate that the Requirements of Rule 23(a) and (b) are Actually Met at this Stage of the Proceedings

Plaintiffs note once again that Defendant's motion is premature. Plaintiffs are not required to satisfy Rule 23(a) and (b) prior to moving for class certification; and Defendant is simply not permitted to challenge the truthfulness of these allegations on the present Rule 12(f) motion. Nonetheless, the issues of commonality, typicality, and adequacy have been properly pled.

### 1. <u>Commonality and Predominance are Properly Pled</u>

A class has sufficient commonality "if there are questions of fact and law which are common to the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(2)). Where questions of law involve "standardized conduct of the defendants towards members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1  requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949

2  (N.D. Ill. 1984).   Here, Plaintiffs allege several common issues of law and fact

3  which predominate in this action. Compl., ¶ 41. Such allegations are far from

4  "redundant, immaterial, impertinent, or scandalous" under Rule 12(f).

5  <div align="center">**2.      Typicality is Properly Pled**</div>

6  A representative's claim is typical if it "arises from the same event or

7  practice, or course of conduct that gives rise to the claims of other class members

8  and [is] based on the same legal theory." H. Newberg, *Newberg on Class Actions*, §

9  1115(b) (1st Ed. 1977). Plaintiffs sufficiently alleged that "[a]s persons that

10  received at least one telephonic communication from Defendant's ATDS without

11  Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of

12  the Class. Compl., ¶ 41.

13  <div align="center">**3.      The Adequacy Requirement is Properly Pled**</div>

14  Defendant makes a blanket statement that "it is impossible to determine

15  whether Plaintiffs are suitable representatives of any ascertainable class."  Def.

16  Memo., 18:7–9. However, Plaintiffs allege they will "fairly and adequately

17  represent and protect the interests of the Class in that Plaintiffs have no interests

18  antagonistic to any member of the Class." Compl., ¶ 42.  Defendant may not

19  challenge the truthfulness of these allegations at the pleading stage.

20  In sum, Defendant has failed to show that the class allegations should be

21  stricken under Fed. R. Civ. P. 12(f).  The class allegations are properly pled.

22  Defendant's improper attempts to bring a disguised motion to preemptively deny

23  class certification should be rejected as prejudicial to Plaintiffs and non-compliant

24  with Fed. R. Civ. P. 23.

25  **VII.   LEGAL STANDARD ON MOTION TO DISMISS**

26  "A motion to dismiss a complaint under [Fed. R. Civ. P.] 12(b)(6) tests the

27  legal sufficiency of the claims asserted in the complaint." *Delino v. Platinum*

28  *Cmty. Bank*, 628 F. Supp. 2d 1226, 1230 (S.D. Cal. 2009).  The court must accept

as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).  To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (S. Ct. 2007).  A plaintiff must allege enough facts to state a claim to relief that is plausible on its face, and not simply conceivable. *See Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).

## VIII.   PLAINTIFFS ADEQUATELY PLED USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM

### A.   Detailed Factual Allegations Are Not Required and Allegations Similar to Plaintiffs' Have Been Found Sufficient to Plausibly Allege Use of an ATDS Prior to Discovery

The TCPA Complaint need only "contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Vaccaro v. CVS Pharm., Inc.*, 2013 U.S. Dist. LEXIS 99991, *2 (S.D. Cal. Jul. 16, 2013). Plaintiffs' Complaint alleges claims with all known facts describing the circumstances that accompanied Defendant's violations.  Plaintiffs' factual allegations are as specific and detailed as the context allows, and certainly sufficient to state a short and plain statement of entitlement to relief.  Fed. R. Civ. P. 8.  *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. Or. 2012).

"[I]t is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS, such as what type of machines were used to make a call or how those machines functioned." *Johansen v. Vivant, Inc.* ("*Johansen*"), 2012 U.S. Dist. LEXIS 178558, at *11 (N.D. Ill. Dec. 18, 2012).  Courts tend to follow one of two approaches in determining whether plaintiffs have sufficiently pled the use of an ATDS. *Maier v. J.C. Penney Corp.,* 13-cv-0163-IEG (DHB), 2013 U.S. Dist.

Kazerouni Law Group, APC
Costa Mesa, California

LEXIS 84246, *7–9 (S.D. Cal. 2013). Here, Plaintiffs have satisfied both approaches.

### 1.   First Approach

Under the first approach, courts allow plaintiffs to make "minimal allegations regarding use of an ATDS in recognition of the fact that the type of equipment used by the defendant to place the 'call' is within the sole possession of the defendant at the pleading stage, and will therefore only come to light once discovery has been undertaken." *Id*. at *7 (citation omitted).

In satisfaction of this approach, Plaintiffs provided the alleged outgoing telephone number, date and time of the calls, and stated their belief that an ATDS was used, which has the capacity to dial and store telephone numbers without human intervention, and has the capacity to store or produce telephone numbers to be called, using a random sequential number generator. Compl., at ¶¶ 11, 16, 17, 19, 21, 22, 24, 27, 31, and 38.  *See In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) ("Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers. While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage.") (citation omitted).  *See also Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013) ("With respect to the use of an automatic telephone dialing system ('ATDS'), which is defined as equipment with the capacity to store or produce numbers to be called using a random or sequential number generator, 'neither section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiffs to plead his claim with particularity.'").

### 2.   Second Approach

"[The second] approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery, rather it

Kazerouni Law Group, APC
Costa Mesa, California

necessitates that they plead only facts easily available to them on the basis of personal knowledge and experience." *Johansen v. Vivant, Inc*., 2012 U.S. Dist. LEXIS 178558, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18 2012).  Plaintiffs must simply "go beyond . . . using statutory language . . . and must include factual allegations about the 'call' . . . allowing for a reasonable inference that an ATDS was used." *Maier v. J.C. Penney Corp.,* 2013 U.S. Dist. LEXI 84246, *8 (S.D. Cal. June 13, 2013) (citing *Kramer v. Autobytel, Inc*., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010).   Examples of indirect factual allegations supporting a reasonable inference of use of an ATDS include "generic content of a message, a description of a robotic sounding voice, or a lack of human response."  *Id*. at *9.

Here, Plaintiffs described in the Complaint a prerecorded message, or voice, with no live human on the line when they answered the alleged calls. *See* Compl. at ¶¶ 17, 19, 22, 24, and 31.  Plaintiffs also alleged that Defendants made those calls using an ATDS, and further specified that the telephone equipment used by Defendant to place the calls at issue had the capacity to dial telephone numbers automatically from a stored list or database without human intervention. *See* Compl. at ¶¶ 17, 19, 22, 24, 27, and 31. The use of a prerecorded voice is also suggestive of an ATDS, which is often times used to play an automated message as it would be inefficient to have a live person answer the call only to push a button and play the recorded message.

Taken together, Plaintiffs' allegations plausibly show use of an ATDS. *See Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) ("Plaintiff's complaint alleges both that Defendant used an automatic telephone dialing system and that Defendant's system utilized an artificial voice. Either allegation is sufficient on its own to support Plaintiff's claims."); *Pacleb v. Cops Monitoring*, 2014 U.S. Dist. LEXIS 91976, at *4 (C.D. Cal. Jul. 7, 2014) ("Plaintiff alleges that the defendant called him using an ATDS. Whether defendant actually did so is better adjudicated after the evidentiary record has been developed."); *Knutson v.*

Kazerouni Law Group, APC
Costa Mesa, California

*Reply!, Inc.*, No. CV 10-01267, 2011 U.S. Dist. LEXIS 156409, at *1 (S.D. Cal. Apr. 13, 2011) (noting the difficulty a TCPA plaintiff faces in "knowing the type of calling system used without the benefit of discovery"); *Lemieux v. Lender Processing Ctr.*, No. 16-cv-1850-BAS(DHB), 2017 U.S. Dist. LEXIS 47139, at *14 (S.D. Cal. Mar. 24, 2017) ("The allegation that Plaintiff heard a 'pause and/or clicking noise before a representative of Defendants came on the line' is a sufficient description in laymen's terms to establish Plaintiff's belief that the call was delivered via an ATDS.").

Accordingly, Plaintiffs have sufficiently pled use of an ATDS by Defendant to place unwanted automated calls to Plaintiffs' cellular telephones.

**B.    Defendant's Case Law Should Not Be Followed**

The decision in *Duguid v. Facebook, Inc.*, was wrongly decided.  The court misunderstood and misapplied the ATDS issue under the TCPA.  2017 U.S. Dist. LEXIS 22562 (N.D. Cal. Feb. 16, 2017).   In that case, the Court dismissed Plaintiff's complaint because he "did not suggest that Facebook [sent] en masse to randomly or sequentially generated numbers," but rather, his allegations indicated that "Facebook's login notification text messages [were] targeted to specific phone numbers." *Id*. at *12.

Likewise, here, Defendant asserts that Plaintiffs did not sufficiently allege the use of an ATDS because their allegations "suggest[] direct targeting that is inconsistent with the sort of random or sequential number generators required for an ATDS." [Def. Memo., 20:22–24].  However, dialing equipment does not need to actually dial numbers "randomly" in order to qualify as an ATDS under the TCPA. Rather, "the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting 47 U.S.C. § 227(a)(1)). By properly applying the statutory definition, and by "drawing all

Kazerouni Law Group, APC
Costa Mesa, California

reasonable inferences in favor of the plaintiff" (*Ass'n for Los Angeles Deputy Sheriffs v. City of Los Angeles*, 648, F.3d 986, 991 (9th Cir. 2011)), it is reasonable to infer that the "equipment [Defendant used] has the capacity to 'store or produce telephone numbers to be called, using a random or sequential number generator," even if it was not presently being used for that purpose. *Satterfield*, 569 F.3d at 951.

Debt collectors often use predictive dialers, which are per se an ATDS (as explained above), for debt collection calls.   Based on common sense, debt collectors strategically "target" persons who allegedly owe a debt, yet debt collectors are not exempt under the TCPA.  This goes to show that Defendant may "target" a specific individual in terms of the purpose for the call, yet still act in violation of the TCPA by using such prohibited equipment as alleged.   There is also no express exemption for targeted calls and Defendant cites no support from controlling FCC rulings to even suggest that "targeted" calls means that an ATDS could not have been used.

As a result, the ATDS allegations were sufficiency pled and the motion to dismiss under Rule 12(b)(6) should be denied on this ground.

## IX.   PLAINTIFFS ADEQUATELY PLED ARTICLE III STANDING

### A.    Legal Standard on Rule 12(b)(1) Motion

"At the pleading stage Article III standing is something to be alleged, not proved." *United States v. Funds*, 719 F.3d 648, 651 (7th Cir. 2013).  A pleading sufficiently confers jurisdiction upon a federal court by alleging *even a nominal injury* traceable to the defendant's alleged misconduct. *See Ung v. Universal Acceptance Corp.*, 2016 WL 4132244, at *2 (D. Minn. Aug. 3, 2016) ("While the injury [of a single autodialed phone call] might well be minimal, it is enough to clear Article III's low bar for a concrete injury.").

When reviewing a 12(b)(1) facial attack on the complaint, the court "must accept all factual allegations in the complaint as true." *Haw. Coal. for Health v.*

Kazerouni Law Group, APC
Costa Mesa, California

*Hawaii*, 365 F. App'x 874, 876 (9th Cir. 2010); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004). "Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975) (citation omitted). As alleged in the Complaint and described below, Plaintiffs suffered economic loss, invasion of privacy, annoyance, and wasted time as a direct result of Defendant's transmission of unwanted calls to their cell phones using an ATDS or prerecorded voice. Compl., ¶¶ 26, 27, 29, 31, and 32.

In light of these alleged injuries and for the reasons set forth below, Plaintiffs have Article III standing to assert their TCPA claims.

### B. Plaintiffs Have Adequately Alleged Article III Standing to Sue for Violation of their Substantive Rights under the TCPA

Defendant contends that Plaintiffs lack standing to sue for failure to allege any concrete harm related to the use of an ATDS. However, Plaintiffs have sufficiently pled a concrete and particularized injury to confer Article III standing, both in terms of violation of their substantive right to privacy protected by the TCPA, and the right to be free from economic harm from unwanted calls.

### 1. The *Spokeo* Decision Does Not Support Defendant's Position

In *Spokeo, Inc. v. Robins* ("*Spokeo*"), the defendant allegedly violated the Fair Credit Reporting Act ("FCRA"), which requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 136 S. Ct. 1540, 1545 (2016) (quoting 15 U.S.C. § 1681e(b)).

The U.S. Supreme Court expressed no opinion as to whether this procedural FCRA violation constituted a "concrete injury," but did note that "[i]t is difficult to imagine how the dissemination of an incorrect zip code [under the FCRA], without more, could work any concrete harm." *Id.* at 1550. Thus, the U.S. Supreme Court held that a "bare procedural violation, divorced from any concrete

Kazerouni Law Group, APC
Costa Mesa, California

harm" does not establish concrete injury. *Id.* at 1549.  The concern in *Spokeo* "has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *3 (N.D. W. Va. June 30, 2016).

The overwhelming majority of post-*Spokeo* cases "have repeatedly recognized that the receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA." *Ung.*, 2016 U.S. Dist LEXIS 102363, at *4; *see also Rogers v. Capital One Bank* (USA), N.A., No. 1:15-CV-4016, 2016 U.S. Dist. LEXIS 73605, at *2 (N.D. Ga. June 7, 2016) (rejecting lack of standing argument where it was alleged "the Defendant made unwanted phone calls to their cell numbers"); *Hewlett v. Consol. World Travel, Inc.*, 2016 U.S. Dist. LEXIS 112553, at *5 (E.D. Cal. Aug. 23, 2016) ("Courts have consistently held that allegations of nuisance and invasion of privacy in TCPA actions are sufficient to state a concrete injury under Article III."); *Mey*, 2016 U.S. Dist. LEXIS 84972, at *7 (citing cases).

## 2.   *Van Patten* **is Controlling and On-Point**

Under the recent and binding authority of the Ninth Circuit in *Van Patten v. Vertical Fitness Grp., LLC*, it was further clarified and confirmed that "[t]he TCPA establishes the *substantive* right to be free from certain types of phone calls and texts absent consumer consent." 847 F.3d 1037, *10–11 (9th Cir. 2017). Defendant made a feeble attempt to distinguish that case in a footnote (Def. Memo., 23, fn. 4) by focusing on the fact that *Van Patten* involved telemarketing text messages, rather than calls made for debt collection purposes, such as here. However, *Van Patten's* application is much more broad than Defendant suggests. The Court explored the nature and purpose of the TCPA, and noted, "Congress identified *unsolicited contact* as a concrete harm, and gave consumers a means to redress this harm." *Id*. Further, "[a] plaintiff alleging a violation under the TCPA

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

'need not allege any additional harm beyond the one Congress has identified.'" *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis added).

The language and reasoning in *Van Patten* makes clear that the Court did not intend to limit the reach of its decision to telemarketing calls or text messages.[7]   Rather, the Court reaffirmed the purpose and intent of Congress, which is to protect consumers from unwanted intrusion and nuisance. *See Hovila v. Tween Brands, Inc.*, No. C09-0491RSL, 2010 U.S. Dist. LEXIS 34861, at *29 (W.D. Wash. Apr. 7, 2010) (The "key consideration" in determining whether certain types of automated or prerecorded calls should be permitted, is "whether consumers would consider the calls a nuisance or an invasion of their privacy.").

Finally, other Courts have agreed that the TCPA applies to debt collection. *See also Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) ("[W]e reject CPS's argument that the TCPA only applies to telemarketing, not debt collection.").

### 3.    Plaintiffs Adequately Allege Concrete Injury in Fact

Importantly, Defendant concedes here, and Plaintiffs agree, the alleged calls by Defendant were "arguably . . . stressful, aggravating, and occupied Plaintiffs' time," which is precisely the type of injury that Congress intended for the TCPA to redress. Def.'s Motion, 24: 2-4. This concession by Defendant is fatal to its motion. Further, Plaintiffs themselves alleged in the Complaint that they were personally affected by Defendant's calls, which caused them to feel frustrated and distressed. Compl. at ¶ 31. Defendant's conduct also "invad[ed] Plaintiffs' privacy." *See id*. at ¶ 26.

---

[7] In *Van Patten*, the Ninth Circuit explained that, in enacting the TCPA, "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements." 847 F.3d at 1043 (citing Pub. L. 102-243, § 2, ¶ 12). The legislature "identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm." *Id*. A plaintiff alleging a violation under the TCPA "need not allege any additional  harm beyond the one Congress has identified." *Id*.  (citing *Spokeo*, 136 S. Ct. at 1549 ).

Unlike the FCRA violations depicted in *Spokeo*, "TCPA violations necessarily cause harm to consumers." *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 2017 U.S. Dist. LEXIS 5620, at *12-14 (C.D. Cal. Jan. 13, 2017). "Every unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm: the recipient wastes her time and incurs charges for the call if she answers the phone, and her cell phone's battery is depleted even if she does not answer the phone."[8] *Cabiness v. Educ. Fin. Solutions, LLC*, 2016 U.S. Dist. LEXIS 142005, at *5 (N.D. Cal. Sept. 1, 2016).

"In addition to these tangible harms, unsolicited calls also cause intangible harm by annoying the consumer." *Id. See also Lavigne v. First Cmty. Bancshares, Inc.*, 2016 U.S. Dist. LEXIS 144741, at *16 (D. N.M. Oct. 19, 2016) ("[I]n contrast to the injury asserted in *Spokeo*, which was 'arguably merely procedural and thus non-concrete,' the TCPA violations alleged in the case at bar were sufficiently concrete to confer standing because if proven, they 'required [p]laintiffs to waste time answering or otherwise addressing widespread robocalls.") (quoting *Booth v. Appstack, Inc.*, 2016 U.S. Dist. LEXIS 68886, at *5 (W.D. Wash. May 25, 2016); *Aranda v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 111828, at *5 (N.D. Ill. Aug. 23, 2016) (the TCPA "directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA").

### 4. Plaintiffs Allege Economic Injury

Plaintiffs also sufficiently alleged tangible, economic injury. Unwanted phone calls cause concrete harm by 1) "depleting limited minutes that the consumer has paid for or by causing the consumer to incur charges for calls;" 2) by

---

[8] Defendant's assertion (wherein no authority was cited) that "Plaintiffs would have been no better off had the phone numbers been dialed manually[,]" (Def's Memo., at 24: 4-6) ignores case law which acknowledges that tangible harms, such as incurring a charge or loss of battery life, constitute actual harm under the TCPA. *See Cabiness*, 2016 U.S. Dist. LEXIS 142005, at *5.

Kazerouni Law Group, APC
Costa Mesa, California

"deplet[ing] a cell phone's battery;" and also 3) for "the cost of electricity to recharge the phone." *Mey*, 2016 U.S. Dist. LEXIS 84972 at *1–8. *See also Booth,* 2016 WL 3030256 at * 5 (finding concrete injury in the form of "waste[d] time answering or otherwise addressing robocalls").

Here, Plaintiffs' alleged that Defendant's calls were placed to telephone numbers assigned to cellular telephone services for which Plaintiffs each incur a charge for incoming calls. Compl. at ¶ 29.  Since such "out-of-pocket expenses . . . suffice to qualify under any view of actual damages," Plaintiffs have adequately alleged actual harm. *Doe v. Chao*, 540 U.S. 614, 627 n.12 (2004). *See also King v. Time Warner Cable*, 113 F. Supp. 3d 718, 728 (S.D. N.Y. 2015) ("the TCPA makes clear that the provision against autodialing was drafted to protect consumers who pay additional fees for cellular phones") (internal quotations omitted).

Although Defendant cites no authority, it appears Defendant relied on *Romero* to argue that Plaintiffs cannot show concrete injury for *each* telephone call, but "the problem with this argument is that Article III requirements for an injury-in-fact do not contain a 'minimum' cost or harm threshold." *Lavigne*, 2016 U.S. Dist. LEXIS 144741, at *17. "Regardless of how small the harm is, it is actual and it is real." *Id*. The types of intangible injuries that result from these calls include "(1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction." *Id*. (citing, *Mey*, 2016 U.S. Dist. LEXIS 84972, 2016 WL 3645195, at *3).

Here, Plaintiffs sufficiently alleged intangible harms, which constitute concrete injury, including the following: 1) both Plaintiffs suffered an invasion of their legally protected interest in privacy (Compl. at ¶ 26); 2) Defendant's calls "personally affected" Plaintiffs, causing Plaintiffs to feel "frustrated and distressed" (*Id*. at ¶ 31); and 3) Defendant's calls forced Plaintiffs to live without the utility of their cellular phones by occupying their cellular telephone with one or

Kazerouni Law Group, APC
Costa Mesa, California

more unwanted calls, causing a nuisance and lost time. *Id*. at ¶ 32.

Thus, Plaintiffs did not allege a "bare procedural violation." Instead, Plaintiffs alleged violations of substantive rights protected under the TCPA, as well as economic injury, which is sufficient for Article III standing.

### 5.   Plaintiffs Alleged Particularized Injuries

It is unclear whether Defendant contends that the injuries alleged were not particularized.  In any event, Plaintiffs satisfied the particularity requirement by alleging that Defendants made automated telephone calls to their cell phones without their consent. *See* Compl. ¶¶ 11, 12, 14, 16–19, 21, 23–25, 27, and 30; *see also Lavigne*, 2016 U.S. Dist. LEXIS 144741, at *5 ("Plaintiff alleges that Defendants made automated telephone calls to her cell phone, each time without her consent, and the Court finds these allegations sufficiently demonstrate a 'particularized' injury."); *Smith*, 2017 U.S. Dist. LEXIS 5620, at *17 ("In this case, Plaintiff alleges a concrete and particularized injury by laying out the elements of a TCPA violation.").

### 6.   *Romero* was Incorrectly Decided and Should Not be Followed

Defendant relies heavily on the case of *Romero v. Dep't Stores Nat'l Bank* ("*Romero*"), to support its argument for dismissal pursuant to Rule 12(b)(1). No. 15-CV-193-CAB-MDD, 2016 U.S. Dist. LEXIS 110889 (S.D. Cal. Aug. 5, 2016). In *Romero*, the Court found that a debtor did not have standing to assert claims against a debt collector who had used an ATDS to dial her number without her consent, in violation of the TCPA, because she "would have been no better off had Defendants dialed her telephone number manually" and therefore, any harm she suffered was "unconnected to the alleged TCPA violations." *Id*. at *6.

Defendant also relied on *Ewing v. SQM US, Inc*., wherein the same incorrect reasoning of *Romero* was adopted.  *See* 2016 U.S. Dist. LEXIS 143272, at *2 (S.D. Cal. Sept. 29, 2016) ("Plaintiff does not, and cannot, allege that

Defendants' use of an ATDS to dial his number caused him to incur a charge that he would not have incurred had Defendants manually dialed his number, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA and lacks standing to make a claim for the TCPA violation here.").

Many courts have been highly critical of the *Romero* decision, including the court in *Lavigne v. First Cmty. Bancshares, Inc.* ("*Lavigne*"), which best described why the decision should not be followed:

> Under [*Romero*'s] rather draconian analysis, a plaintiff would find it almost impossible to allege a harm as a result of . . . robocalls. Worse, **the case ignores the existence of intangible harms that have been recognized in the legislative history and in the case law**. The Court agrees with Plaintiff that ***Romero* is an outlier** in holding that a violation of the TCPA is a bare procedural violation and that some additional harm must be shown to establish standing.

2016 U.S. Dist. LEXIS 144741, at *6-7 (D. N.M. Oct. 19, 2016) (emphasis added).

The majority of district courts agree that the *Romero* court misapplied *Spokeo*, and declined to follow the decision. *See Abante Rooter & Plumbing v. Pivotal Payments, Inc*., No. 16-cv-05486-JCS, 2017 U.S. Dist. LEXIS 26457, at *19-21 (N.D. Cal. Feb. 24, 2017); *Mbazomo v. ETourandtravel, Inc*., No. 2:16-cv-02229-SB, 2016 U.S. Dist. LEXIS 170186, at *4 (E.D. Cal. Dec. 8, 2016); *Cabiness v. Educ. Fin. Sols*., LLC, No. 16-cv-01109-JST, 2017 U.S. Dist. LEXIS 6304, at *6-8 (N.D. Cal. Jan. 17, 2017); *Juarez v. Citibank, N.A*., No. 16-CV-01984-WHO, 2016 U.S. Dist. LEXIS 118483, at *2-3 (N.D. Cal. Sept. 1, 2016).

The Supreme Court has also rejected the argument that an injury must be "significant."  Instead, a small injury, even "an identifiable trifle," is sufficient to confer standing. *United States v. Students Challenging Regulatory Agency*

Kazerouni Law Group, APC
Costa Mesa, California

*Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). *See also Johnson v. Yahoo! Inc.*, 1:14-cv-02028, at 7:7-9 (N.D. Ill.) (stating at hearing that "[a] communication pushed on to a recipient without the recipient's consent . . . is a *de facto* concrete harm that has been elevated by statute to a cognizable injury"). [Exhibit 2 to RJN].

Finally, *Romero* is distinguishable and should not be applied, here, because that case was "beyond the summary judgment stage," which meant the court was allowed to look beyond the allegations in the complaint and consider the evidence submitted by the parties. 2016 U.S. Dist. LEXIS 110889, at *2. Contrariwise, Defendant, here, presents a facial attack based solely on the Plaintiffs' allegations in the Complaint.[9] In a facial standing challenge, factual allegations must be construed in the plaintiff's favor. *Cabiness*, 2017 U.S. Dist. LEXIS 6304, at *6–8. Any factual issues regarding the number of calls made to Plaintiffs, including the issue of consent and equipment used to place those calls, "should be resolved on summary judgment or at trial, based on the available evidence," but such issues are "not appropriate for the threshold stage of jurisdictional dismissal based on standing." *Id.* (citing *Lavigne*, 2016 U.S. Dist. LEXIS 144741, 2016 WL 6305992 at *7).

Finally, Judge Bashant recently distinguished *Romero*, and that reasoning is applicable here. *See Lemieux,* 2017 U.S. Dist. LEXIS 47139 at *11 ("Plaintiff alleges he heard the call, answered the call, spoke with both Defendants who were attempting to solicit his business without his consent, incurred a charge for the incoming call, and suffered frustration, distress, and lost time because of the invasion of his privacy . . . These facts are distinguishable from <u>*Romero*</u>, and the allegations are sufficient to show a concrete injury.").

_____

[9] Also, Defendant has presented no actual evidence of lack of Article III standard, which further shows that Defendant brought a facial challenge to Article III standing and not a factual challenge.

Kazerouni Law Group, APC
Costa Mesa, California

Plaintiffs, therefore, adequately alleged Article III standing to sue Defendant for violations of the TCPA, which violations invaded Plaintiffs' privacy and caused economic injury. Since Defendant brought a facial Article III challenge, Plaintiffs need not submit actual evidence to support standing at the present time.

## X.   CONCLUSION

In sum, Plaintiffs respectfully request the Court deny Defendant's motions in their entirety.

The motion to stay is prejudicial to Plaintiffs and is not warranted, especially since the ATDS issue is likely a jury question and any change in the law based on the appeal in the D.C. Circuit would not change Defendant's burden to produce discovery concerning the dialer used to call Plaintiffs. Plaintiffs to not allege and Defendant has not shown that Plaintiffs' telephone numbers are reassigned numbers, nor is a stay warranted on the revocation of consent issue where at least one of the plaintiffs alleges consent never existed in the first instance. Even if the D.C. Circuit rules that consent may only be revoked in writing both the Plaintiffs allege that they revoked any consent in writing through their attorney and subsequently received calls.

The motion to strike class allegations is premature and prejudicial to Plaintiffs, and none of the class allegations are subject to the Rule 12(f) standard. Plaintiffs adequately allege the requirements of Fed. R. Civ. P. 23(a) and (b)(3), which is sufficient to survive Defendant's motion to strike. Defendant did not actually bring a preemptive motion for class certification, despite Defendant's disguised attempt to do so in order to prejudice Plaintiffs by denying them discovery needed to prove the requirements of Rule 23.

Plaintiffs' adequately pled use of an ATDS based on all available facts known to Plaintiffs. More of Plaintiffs should not be demanded at the pleading stage where the detailed information about the telephone equipment used by Defendant is in Defendant's possession prior to discovery.

**Kazerouni Law Group, APC**
Costa Mesa, California

Lastly, Plaintiffs have included sufficient factual allegations to show facial Article III standing to sue Defendant for TCPA violations. Should the Court grant Defendant's motion, in whole or in part, Plaintiffs respectfully request leave to amend the Complaint to cure any deficiencies. The policy of favoring amending is to be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Date: April 10, 2017

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:/s/ Abbas Kazerounian
    ak@kazlg.com
    Abbas Kazerounian
    *Counsel for Plaintiffs*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Yana A. Hart, Esq. (SBN: 306499)
yana@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Plaintiffs*

Kazerouni Law Group, APC
Costa Mesa, California